UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:20-cv-00838

**DANTZLER INC.**

    Plaintiff,

vs.

**US SECURITY ASSOCIATES, INC.**

    Defendants.

_____/

## COMPLAINT

Plaintiff, DANTZLER, INC. ("Plaintiff") by and through the undersigned counsel hereby sues Defendant, U.S. SECURITY ASSOCIATES, INC. (herein after "USSA") and alleges:

## PARTIES

1. DANTZLER, INC. is a for-profit corporation organized under the laws of the State of Florida.

2. U.S. SECURITY ASSOCIATES, INC. is a foreign for-profit corporation, with its principal place of business located in Conshohocken, Pennsylvania.

## JUSRISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the action is between citizens of different states.

4. Venue properly lies in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the Middle District of Florida.

**CASE NO.: 3:20-cv-00838**

5. USSA is subject to personal jurisdiction in Florida for purposes of this lawsuit pursuant to Florida Statute §48.193(1), because USSA operated, conducted, engaged in, or carried on a business venture in Florida, and a cause of action arises from those activities (Fla. Stat. §48.193(1)(a)), and because USSA committed a tortious act within Florida and a cause of action in this matter arises from that tortious act (Fla. Stat. §48.193(1)(b)). USSA also maintains a registered agent for service of process in Florida.

## FACTUAL BACKGROUND

6. DANTZLER is a lumber distributor headquartered in Miami Florida. For decades, DANTZLER has enjoyed a reputation for exceptional quality products and service.

7. DANTZLER's domestic operations is comprised of distribution warehouses in Pompano Beach, Florida, Toa Baja, Puerto Rico and Jacksonville, Florida.

8. In the Spring of 2010 and up to an including July 2010, USSA, through David Euler (hereinafter "Euler"), then a "Business Development" representative, met with DANTZLER to discuss providing a proposal for security services. At the time, DANTZLER was utilizing the services of another security provider and was in the market for a new provider for its Jacksonville yard.

9. At the initial meeting with DANTZLER, Euler was acting within the course and scope of his authority as an employee or agent of USSA.

10. At the aforesaid meeting and at various times, Euler expressly told DANTZLER that USSA would utilize its "One-Tour Verification System" to ensure that tours (patrols) were made when and where they were supposed to.

11. Euler further expressly represented that the touring system was supervised at all times and that irregularities would be reported and immediately addressed without the need for client intervention.

12. Euler also expressly told DANTZLER that USSA would hire the "best recruits" for the job and provide their employees with above-average wages.

13. USSA, through its agents, employees and/or representatives misrepresented to DANTZLER its ability to verify that tours (patrols) were being performed at the time and place designated.

14. USSA, through its agents, employees and/or representatives misrepresented to DANTZLER that it would hire the best recruits and compensate them above average.

15. USSA, through its agents, employees and/or representatives misrepresented to DANTZLER that in the event of loss caused by its employees, USSA would reimburse DANTZLER for such losses.

16. On or about September 1, 2010, DANTZLER and USSA entered into an agreement for the provision of security services to the DANTZLER warehouse and yard located at 7850 West Beaver St., Jacksonville, Florida.  Attached hereto as Exhibit A.

17. In the years following, DANTZLER experienced a series of thefts at the Jacksonville yard resulting from negligence on the part of USSA and its officers and/or perpetrated by the USSA officers themselves.

18. Of note, DANTZLER's manager, Nick Ballas, first suspected that lumber and other wood products were missing in December 2016 when he observed that certain wood products that were in stock were not in their usual location.

19. In January 2017, the lumber yard was reorganized, and the inventory reviewed; however, the missing products could not be located.  A partial internal audit conducted in February 2017 of

revealed that at least $45,000.00 in inventory was missing at that time, pending a more comprehensive audit.

20. DANTZLER reported the suspected theft to David Euler, USSA District Manager, who pledged support to assist DANTZLER in investigating the loss.

21. Thereafter, on April 28, 2017, DANTZLER filed a police report with the Jacksonville Sheriff's Office indicating that there was a theft of lumber from the yard.

22. On or about July 31, 2017, DANTZLER conducted its annual inventory, when it was discovered that a more substantial amount of lumber and wood products were missing from the yard than originally suspected. The value of the stolen lumber was estimated to be in excess of $200,000.00.

23. It was determined that the thefts occurred between August 2016 and November 2016 based on the inventories conducted by DANTZLER.

24. Despite DANTZLER's numerous efforts to elicit support from USSA in investigating the loss(es) occurring at the Jacksonville yard, USSA was unresponsive and unilaterally terminated its contract with DANTZLER on July 19, 2017.

25. On July 2, 2018, USSA former employee, Christian Goddard (hereinafter, "Goddard") voluntarily presented to the Jacksonville Sheriff's Office in regard to the ongoing investigation concerning the thefts at the Dantzler Jacksonville yard.

26. Mr. Goddard relayed that he was one of the USSA security officers assigned to the Dantzler Jacksonville yard on the weekends during the relevant time period.

27. He explained that on numerous occasions during the relevant time period he allowed a Dantzler employee and his associate, a non-Dantzler employee, unauthorized access to the Jacksonville

yard. He explained that the pair came with trailers and stole lumber products from the warehouse.

28. Goddard admitted that on some occasions he would leave his post at the gate or literally, look the other way, whenever Mr. Reed and his associate would come to the warehouse to steal Dantzler property.

29. Goddard further admitted that it was his job to watch the gate and walk the property every two hours. He was also responsible for documenting visitors in a logbook at the guard gate.

30. He admitted that when stationed at the gate, he did not log Mr. Reed or his accomplice in the logbook whenever they came to steal wood.

31. Shockingly, Goddard attested that he was aware that what Mr. Reed was doing was wrong and was aware that his actions in allowing them access to the warehouse and looking the other way was wrong.

## COUNT I: FRAUDULENT INDUCEMENT

32. Plaintiff, DANTZLER, adopts and incorporates into this Count the allegations in paragraphs 1-31 as set forth herein and alleges:

33. Prior to entering into a contractual relationship with DANTZLER, USSA through its employee and then business development representative, Euler, made various fraudulent misrepresentations to DANTZLER for the purpose of inducing DANTZLER to executing the services agreement.

34. USSA knew that its representations with respect to the One Tour system was false and would be effectively rendered useless if not properly or routinely monitored.

35. False statements regarding the real-time review, monitoring and reporting of the One Tour system were made to induce DANTZLER to enter the services agreement.

36. Euler admitted that tour reports were in fact not relayed real-time as represented by USSA; but rather, had to be physically downloaded from the Jacksonville yard by an off-site USSA supervisor.

37. USSA knew that its representations were false. Among other things, Euler in his capacity as USSA District Manager, subsequently admitted that USSA was "scraping the bottom of the barrel" with respect to the officers that were provided to DANTZLER.

38. Additionally, Euler admitted that the services provided by USSA was "not good."

39. USSA knew the statements were false when it made it or made the statements knowing it was without knowledge of its truth or falsity.

40. USSA intended that the misrepresentations would induce DANTZLER to enter into a contractual relationship USSA based on the false statements.

41. DANTZLER justifiable relied on USSA's misrepresentations in entering into a contractual relationship with USSA.

42. As a direct and proximate result of the false statements DANTZLER, has suffered actual damages resulting from theft, consequential damage in the form of loss of profits, loss of corporate good will, loss of inventory and other financial losses related to the investigation and mitigation.

WHEREFORE, Plaintiff, DANTZLER, demands judgment against Defendant, USSA, in an amount in excess of the sum of this court's jurisdictional threshold of $75,000.00 and for any other relief this Court deems just and proper.

## COUNT II: NEGLIGENT SUPERVISION

43. Plaintiff, DANTZLER, adopts and incorporates into this Count, the allegations in paragraphs 1-31 as set forth herein and alleges:

44. At all times material hereto, USSA was the lawful employer of various security officers, including but not limited to, Goddard.

45. Defendant, USSA, during the course of the employment of its officers knew or should have known that its officers, including Goddard, were unfit for employment.

46. Injury to DANTZLER was within the foreseeable zone of risk created by USSA's negligent supervision of its officers, including Goddard.

47. Defendant, USSA, owed a duty to DANTZLER to choose, supervise and retain competent and fit employees to service the lumber yard.

48. Defendant, USSA, breached the aforesaid duty in one or more of the following was:

   a. By failing to take corrective action against employees, including Goddard, upon learning of his unfitness for employment due, *inter alia*, to his failure to follow USSA's own policies and procedures, failing to conduct tours when and where required, failing to maintain documentation of tours, failing to maintain documentation required by DANTZLER.

   b. By failing to investigate officers, including Goddard, upon learning of his unfitness for employment due, *inter alia*, his failure to follow USSA's own policies and procedures, failing to conduct tours when and where required, failing to maintain documentation of tours, failing to maintain documentation required by DANTZLER.

   c. By failing to adequately monitor and control the actions of its employees, including Goddard;

    d.  By other acts or omissions to be determined.

49. As a direct and proximate result of the negligence of the Defendant, USSA, as set forth above, Plaintiff, DANTZLER, has suffered actual damages resulting from theft, consequential damage in the form of loss of profits, loss of corporate good will, loss of inventory and other financial losses related to the investigation and mitigation.

WHEREFORE, Plaintiff, DANTZLER, demands judgment against Defendant, USSA, in an amount in excess of the sum of this court's jurisdictional threshold of $75,000.00 and for any other relief this Court deems just and proper.

## COUNT III: VICARIOUS LIABILITY

50. Plaintiff, DANTZLER, adopts and incorporates into this Count, the allegations in paragraphs 1-31 as set forth herein and alleges:

51. USSA employed Goddard as a security officer.

52. Goddard owed a duty to use reasonable care in discharging his duties as a security officer.

53. During the time that Goddard was employed as a security officer at the Dantzler Jacksonville yard, Goddard breach the aforesaid duty by, among other things, abandoning his post and allowing unauthorized access to the Dantzler yard.

54. The aforesaid acts and omissions occurred during the course and scope of Goddard's employment and was a direct and proximate cause of damage to DANTZLER.

55. USSA is vicariously liable for those acts and omissions committed by Goddard while in the course and scope of his employment with USSA.

WHEREFORE, Plaintiff, DANTZLER, demands judgment against Defendant, USSA, in an amount in excess of the sum of this court's jurisdictional threshold of $75,000.00 and for any other relief this Court deems just and proper.

## COUNT IV: NEGLIGENT MISREPRESENTATION

56. Plaintiff, DANTZLER, adopts and incorporates into this Count, the allegations in paragraphs 1-31 as set forth herein and alleges:

57. Outside of the service agreement, DANTZLER, USSA through its employee and then business development representative, Euler, made various misrepresentations to DANTZLER.

58. USSA knew or should have known that its representations were false.

59. Among other things, Euler in his capacity as USSA District Manager, subsequently admitted that USSA was "scraping the bottom of the barrel" with respect to the officers that were provided to DANTZLER.

60. Additionally, Euler admitted that the services provided by USSA was "not good."

61. Additionally, USSA knew or should have known that its representations with respect to the One Tour system was false and would be effectively rendered useless if not properly or routinely monitored.

62. Euler admitted that tour reports were in fact not relayed real-time as represented by USSA; but rather, had to be physically downloaded from the Jacksonville yard by an off-site USSA supervisor.

63. USSA, through its employee, Euler, intended that the misrepresentations would induce DANTZLER to rely on the statements.

64. DANTZLER justifiable relied on USSA's misrepresentations.

65. As a direct and proximate result of the negligence of the Defendant, USSA, as set forth above, Plaintiff, DANTZLER, has suffered actual damages resulting from theft, consequential damage in the form of loss of profits, loss of corporate good will, loss of inventory and other financial losses related to the investigation and mitigation.

## COUNT V: BREACH OF CONTRACT

66. Plaintiff, DANTZLER, adopts and incorporates into this Count, the allegations in paragraphs 1-31 as set forth herein and alleges:

67. DANTZLER and USSA entered into a written Service Agreement on or about September 1, 2010. *See* **Exhibit A**.

68. USSA agreed, among other things, to provide an on-site supervisor at the Dantzler Jacksonville yard to directly supervise the USSA personnel.

69. USSA breached the Service Agreement by failing to provide an on-site supervisor.

70. USSA's breach of the Service Agreement has resulted in damages to the DANTZLER.

71. As a direct and proximate result of USSA's breach, Plaintiff, DANTZLER, has suffered actual damages resulting from theft, consequential damage in the form of loss of profits, loss of corporate good will, loss of inventory and other financial losses related to the investigation and mitigation.

## COUN VI: VIOLATION OF FLORIDA STATUTE §501.201 et seq.
### (Florida Unfair and Deceptive Trade Practices Act)

72. Plaintiff, DANTZLER, adopts and incorporates into this Count, the allegations in paragraphs 1-31 as set forth herein and alleges:

73. Plaintiff is a consumer under Florida's Unfair and Deceptive Trade Practices Act.

74. Through the aforementioned acts, USSA has unlawfully committed an unfair or deceptive act or practice in the conduct of trade or commerce, in violation of Fla. Stat. §501.204(1).

75. USSA knew that its representations with respect to the One Tour system was false and would be effectively rendered useless if not properly or routinely monitored.

76. Defendant made false statements regarding the real-time review, monitoring and reporting of the One Tour system in its dealings with DANTZLER.

77. Euler admitted that tour reports were in fact not relayed real-time as represented by USSA; but rather, had to be physically downloaded from the Jacksonville yard by an off-site USSA supervisor.

78. The misrepresentations of USSA are reckless, immoral, unethical, deceptive, oppressive, and unscrupulous, and have been injurious to Plaintiff.

79. USSA knew the misrepresentations as to its One Tour system, services and employees were likely to mislead Plaintiff, who was acting reasonably in the circumstances.

80. Plaintiff relied on the misrepresentations by Defendant to its detriment.

81. As a result of USSA's misrepresentations, Plaintiff has suffered actual damages.

82. Plaintiff has retained the undersigned counsel to represent them in this action and has agreed to pay reasonable attorney's fees for the representation.

83. Pursuant to Fla. Stat. §501.211(2), Plaintiff demands recovery of its actual damages and their attorney's fees and costs as provided by Fla. Stat. §501.2105.

**WHEREFORE**, Plaintiff demands judgment against USSA for compensatory, consequential, incidental and punitive damages in excess of $75,000.00, together with the attorney's fees and costs of this action.

**CASE NO.: 3:20-cv-00838**

## JURY TRIAL DEMAND

Plaintiff, DANTZLER INC. requests a trial by jury on all issues so triable.

Dated: July 28, 2020.

> By:  */s Damian Daley*
> Damian D. Daley, Esq.
> Fla. Bar No. 30210
> DLF ATTORNEYS
> Parkside Corporate Center II
> 15150 NW 79th Ct.
> Suite 195
> Miami Lakes, FL 33016
> ddaley@dlf-legal.com
> pleadings@dlf-legal.com
> Phone: 786-837-7733
> Fax: 786-837-7733